CAMPOLO, MIDDLETON & McCORMICK, LLP

June 24, 2021

**VIA ECF**
Hon. George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:  **Reynaldo Almonte and Benigno Pacheco v. Port Drago Corp. et al.**
> **SDNY Case No.: 21-CV-00418-GBD**

Dear Judge Daniels:

This letter is respectfully submitted on behalf of all parties in the above-captioned matter, seeking the Court's approval of the settlement reached between the parties, per the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), as Plaintiffs' claims arise under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). This settlement was reached as a result of a mediation conducted by Susan Salazar, Esq. on May 21, 2021.

The parties have memorialized and executed a settlement agreement, which will discontinue the above-captioned case, with prejudice, in exchange for a payment by the defendants Port Drago Corp. and Charles Drago (collectively, "Defendants") to the plaintiffs Reynaldo Almonte and Benigno Pacheco ("Plaintiffs") in the amount of $40,000.00 in satisfaction for all claims raised in this action (and in accordance with the terms of the settlement agreement). Pursuant to the terms of the settlement agreement, Plaintiff's counsel will retain $13,333.33 in fees and $627.15 in expenses.

*Claims and Defenses*

It is submitted that there are a number of factual and legal disputes between the parties which could ultimately impact Plaintiffs' ability to prevail if this case would have proceeded to dispositive motion practice or to trial.

As set forth in the Complaint, Plaintiffs worked as shoe shiners and shoe repairers for Defendants at their Port Authority Terminal store (the "Store"). For approximately twenty years until March 2020, Mr. Almonte worked at the Store five (5) days per week as a shoe shiner. Mr. Almonte alleges that from the beginning of his employment until June 30, 2015, he worked for Defendants from 6:00 a.m. until 6:30 p.m. From July 1, 2015 until March 13, 2020, Mr. Almonte alleges that he worked for Defendants from 6:00 a.m. until 11:30 a.m. Mr. Almonte also generally alleges that he always worked five (5) days per week.



Also as set forth in the Complaint, from approximately 2014 through March 2020, Mr. Pacheco worked at the Store five (5) days per week as a shoe shiner.  From the beginning of his employment until March 13, 2020, Mr. Pacheco contends that he worked for Defendants from 6:00 a.m. until 11:30 a.m. and that he always worked five (5) days per week.

Plaintiffs allege that during their employment with Defendants, they only received $20 per day from Defendants for their work and that Plaintiffs were allowed to keep the tips given to them by Defendants' customers, which Defendants did not track.

The Complaint alleges that at no time during their employment were Plaintiffs required to clock in or clock out so that Defendants had an accurate record of the actual time that Plaintiffs performed work for them.  Plaintiffs allege that Defendants did not provide Plaintiffs with accurate wage acknowledgement forms or wage statements as required under NYLL §§195(1) and 195(3).

Defendants overall deny any wrongdoing and liability.  More specifically:

- Defendants dispute that Plaintiffs are owed any wages as Defendants contend that their wage records were accurate and that additional monies contained on their statements were provided to Plaintiffs for the work they performed.  Plaintiffs contend that these monies were never actually received, and they were told that if they did not accept them they would be terminated.

- Defendants contend that they paid payroll taxes on the monies that were purportedly provided to Plaintiffs, which would undermine Plaintiffs' claim that they only received $20 a day in wages.

- Defendants contend that the Plaintiffs signed time sheets which reflect their hours worked and that accurate wage statements were provided.

- Defendants contend that they are not covered by the FLSA because they do not engage in interstate commerce and/or they do not gross $500,000 in revenue.

- Defendants deny the willfulness of any alleged violations under the FLSA and NYLL.  *See Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983) ("Employers willfully violate FLSA when (1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements.").  Defendants would seek to prove that they paid Plaintiffs for all work performed, that the method(s) of payment were understood and agreed upon by the parties, and all payment practices were in good faith and with the belief that they were not in violation of the FLSA, NYLL, or other associated guidelines.  Plaintiffs, on the other hand, would seek to prove that any alleged violations were willful and that any purported intention to comply with the wage and hour laws was not done pursuant to the letter or spirit of the FLSA and NYLL.

- Finally, Defendants represent they could not withstand a greater financial exposure than the compromise proposed here, given that the business has been closed due to

COVID and that they had to pay a $200,000 settlement in *Manancella et al. v. Port Drago Corp. et al.*, 19-CV-05856-JLC.

In light of the foregoing disputes and the risks associated therewith, the parties agreed to settle the case to avoid further litigation, motion practice, and trial.

### The Settlement Terms

Pursuant to the Settlement Agreement (annexed as Exhibit 1), the parties have agreed to the following break-down as to payment of the total $40,000.00 settlement amount:

- Unpaid Wages and Liquidated damages - Almonte            $13,019.76

- Unpaid Wages and Liquidated damages - Pacheco            $13,019.76

- Attorneys' fees and expenses:            $13,960.48
  including expenses in the amount of $627.15 ($402 filing fee + $225.15 for process server)

The parties believe this settlement to be a fair resolution to this litigation, due to the aforementioned disputes about the value of Plaintiffs' claims.

### The Settlement Should be Approved

The standard for approval of FLSA settlement is well-established in the Second Circuit. As stated in *Serebryakov v. Golden Touch Transp. of NY. Inc.*, No. 12-3990 (NGG)(RER), 2013 WL 3364393, at *2 (E.D.N.Y. 2013), "[i]n the absence of a certified class, a district court typically considers the following factors to determine whether a settlement of individual FLSA claims is reasonable: (1) the complexity, expense, and likely duration of litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation." *Id.* at *2 (citations omitted). *See also Diaz v. Scores Holding Co.,* No. 07-8718 (THK), 2011 WL 6399468, at *2 (S.D.N.Y. 2011) ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bonafide* disputes...Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, courts will approve the settlement").

Based on the *bona fide* disputes as to the value and viability of Plaintiffs' claims, as well as the inherent risks of trial, all of which were discussed with Mediator Salazar, the parties respectfully submit that the Settlement Agreement represents a fair and reasonable settlement of Plaintiffs' claims in this action.

As set forth above, Defendants contend that Plaintiffs are not owed any unpaid wages or other amounts. However, Defendants realize that there is the potential risk for significant expenses

and liability if this case is not settled.   While Plaintiffs believe they would prevail on their claims, they acknowledge that they face significant risk in establishing liability and damages should this case proceed. Plaintiffs are cognizant of the risks and uncertainty of protracted litigation, motion practice, potential appeals, and other factors that might affect their ability to recover on any of the claims asserted in this action, including the Defendants' inability to withstand a larger judgment, given their financial situation.

It is respectfully submitted that approval of this settlement is warranted because it is the product of a mediation and an arms-length negotiations between parties represented by knowledgeable and experienced counsel who focus their respective practices on wage and hour litigation.  *Wolinsky v. Scholastic, Inc.,* 900 F.Supp.2d 322 (S.D.N.Y. 2012). Throughout the course of the negotiations in the mediation, the parties shared their respective views on the validity and potential value of the claims, and ultimately reached a deal that both sides felt, given the risks associated with protracted litigation, was a fair compromise.  Ultimately, the parties arrived at a settlement amount of $40,000.00 to resolve all claims, including attorneys' fees.  Settlement at this stage of the case for this amount unquestionably constitutes the most efficient and effective conclusion to this litigation for all parties.

The settlement agreement submitted for approval is in line with the mandates of *Cheeks*. The Agreement does not contain a confidentiality provision; the Agreement only provides for a release of NYLL and FLSA claims up to the date of the signing of the Agreement; and Plaintiffs' attorneys' fees will be 33.33% of the total settlement.

Courts in the Second Circuit typically approve attorneys' fees in the range of thirty to thirty-three percent in FLSA cases.  *See Santos v. El Tepeyac Butcher Shop, Inc.*, 2015 WL 9077172, at *4 (S.D.N.Y. Dec. 15, 2015); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. March 20, 2014). Courts in this circuit have also held that the one-third contingency fee satisfies the broad remedial purpose of the FLSA and NYLL. *See Khait v. Whirlpool Corp.*, No. 06–6381 (ALC), 2010 WL 2025106 (E.D.N.Y. 2010).

To this end, Plaintiffs' counsel represents clients (the present plaintiffs included) on a contingency-fee basis, calculated during this case at 33.33% percent.  This was the rate agreed upon by Plaintiffs and counsel at the outset via a retainer agreement.  To date, Plaintiffs' counsel bore all costs of litigation without compensation of any kind as the fee has been wholly contingent upon the result achieved. It is submitted that attorneys' fees in the amount of $13,333.33 (excluding expenses - $402 for the case number and $225.15 for process server) is fair and reasonable.

### Conclusion

In light of the foregoing, the parties respectfully submit that the proposed settlement amount is fair and reasonable, and further, that the terms of the settlement agreement comport with the requirements under the FLSA and NYLL. The parties respectfully request that the Court approve the settlement.

We thank the Court for its time and consideration.

Respectfully submitted,

**CAMPOLO, MIDDLETON
& McCORMICK, LLP**

By: _____

Yale Pollack, Esq.

Attachment

cc:      All Counsel (via ECF)