## SETTLEMENT AGREEEMENT AND RELEASE OF CLAIMS

This Settlement Agreement (the "Agreement") is entered into on this 24th day of June, 2021, by and between Reynaldo Almonte and Benigno Pacheco (together "Plaintiffs"), on the one hand, and each of Port Drago Corp. d/b/a Drago Shoe Repair and Charles Drago (together "Defendants"), on the other hand (all collectively hereinafter referred to as the "Parties").

### RECITALS

WHEREAS, on January 20, 2021, Plaintiffs filed an action in Case No. 1:21-cv-418 (S.D.N.Y.) asserting claims against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and under New York Labor Law (the "Litigation"); and

WHEREAS, the Parties engaged in Court-ordered mediation regarding the possibility of a voluntary resolution of the claims asserted in the Litigation, which mediation included the extensive exchange of documents between the Parties; and

WHEREAS, in connection with the mediation, the Parties reached a settlement of this matter on the terms set forth herein; and

WHEREAS, the purpose of this Agreement is to settle fully and finally all claims asserted in the Litigation after arms-length bargaining; and

WHEREAS, in executing this Agreement, defendants do not admit any liability Or wrongdoing, and the consideration exchanged herein does not constitute an admission of any liability, error, contract violation, or violation of any federal state, or local law, rule or regulation; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. ADDITIONAL DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

    1.1   "Agreement" means this Agreement, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

    1.2   "Court" means the United States District Court for the Southern District of New York.

    1.3   "Complaint" means the Complaint filed in the litigation, including any amendments thereto.

1.4 "Settlement Amount" means Forty Thousand Dollars ($40,000), inclusive of costs and attorneys' fees.

1.5 "Defendants' Counsel" means Paykin Krieg & Adams, LLP, 10 Grand Central, 155 East 44th Street, 6th Floor, New York, New York 10017, 347-879-2345, dschrader@pka-law.com.

1.6 "Plaintiffs' Counsel" means Campolo, Middleton & McCormick, LLP, 4175 Veterans Memorial Hwy, Ste 400, Ronkonkoma, New York, 11779, 631-738-9100, YPollack@cmmllp.com.

1.7 "Effective Date" means the date on which this Agreement becomes effective, which shall mean 21 days following the Court's Order Granting Settlement Approval of the Agreement.

1.8 "Order Granting Settlement Approval" shall mean the Order entered by the Court approving the terms and conditions of this Agreement.

1.9 "Defendant Releasees" means Defendants and their past, present, and future officers, directors, employees, shareholders, managers, members, partners, insurers, successors, predecessors, parents, agents, subsidiaries, affiliates, attorneys and assigns.

2. SETTLEMENT TERMS

   2.1 Settlement Payments

   i. The Defendants agree to pay the Settlement Amount (Forty Thousand Dollars ($40,000)) within 10 days of the Effective Date. The payment of the Settlement Amount shall be paid as follows: (a) one check for $13,019.76 payable to Reynaldo Almonte; (b) one check for $13,019.76 payable to Benigno Pacheco; and (c) the balance of $13,333.33 in attorneys' fees plus costs in the amount of $627.15 in expenses payable to plaintiffs' legal counsel.

   ii. Defendants shall deliver the Settlement Amount through a trackable delivery service and delivered to Plaintiffs' Counsel.

   iii. Payment of the Settlement Amount shall fully resolve and satisfy any and all amounts to be paid to Plaintiffs and their counsel under this Settlement Agreement, including attorneys' fees and disbursements.

   iv. In the event that the Defendants fail to timely make payment of the Settlement Amount within 10 days of the Effective Date, Plaintiffs or Plaintiffs' Counsel shall send Notice of Overdue Payment by email to David A. Schrader at dschrader@pka-law.com; giving notice of a failure of receipt of the Settlement Amount. The email shall be

        entitled "FLSA Litigation Default Notice – Urgent Attention Required." Such Notice will be deemed received on the day the email is sent if received prior to 5 PM Eastern Time or the next day if received later than 5 PM Eastern. The Defendants will then have 5 business days to correct any payment failure by paying the Settlement Amount (the "Correction Period"). In the event that the failure to pay the Settlement Amount is not resolved within the Correction Period, Plaintiffs may declare a default under this Agreement ("Default"), and shall advise David Schrader that Plaintiffs declare a Default. Alternatively, Plaintiffs may deem this Agreement null and void and restore the Litigation with the Court.

   v.    Upon any Default, Plaintiffs may request the Court to enter judgment in any unpaid amount against the Defendants. Plaintiffs will additionally be entitled to be paid reasonable attorneys' fees in connection with the entry and collection of such judgment. Notwithstanding, this provision will not apply if either Plaintiff declares the Agreement null and void and restores the Litigation.

   vi.    Tax Liabilities. Plaintiffs expressly agree that the sums paid herein may constitute taxable income and that they are solely responsible for payment of any income tax liabilities associated with the payment of their portion of the Settlement Amount. In the event that any taxing authority shall seek to hold Defendants liable for any unpaid tax due by any Plaintiffs, such Plaintiffs shall indemnity and hold harmless the Defendants from such claim or liability.

2.2    Settlement Amounts Payable as Attorneys' Fees and Costs.

   i.    The parties agree that Plaintiffs' Counsel will seek approval of, and Defendants will not oppose, a request to the Court that one-third of the Settlement Amount be apportioned as an award of attorneys' fees. In addition, Plaintiffs' Counsel shall seek, and Defendants will not oppose, reimbursement of reasonable actual case-related costs and expenses from the Settlement Amount. The portion of the Settlement Amount awarded by the Court as attorneys' fees and costs to Plaintiffs' Counsel shall constitute full satisfaction of any claim for attorneys' fees or costs for any claims released herein.

   ii.    The substance of Plaintiffs' Counsel's request for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement Amount and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's request for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on approval of this Settlement Agreement. In the event that the Court (or any appellate court) awards less than the requested amounts, only the

>    awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that is not approved by the Court shall be redistributed to the Plaintiffs.

3. RELEASE OF CLAIMS

    3.1 <u>Release by Plaintiffs</u>:  Plaintiffs, their attorneys, agents, successors, affiliates, heirs, and assigns, fully, finally and forever release, discharge and hold harmless the Defendant Releasees, including their attorneys, agents, and anyone acting or authorized to act on their behalf, from any and all claims, demands, and causes of action for all matters that arise from or are related to the claims and defenses alleged in the Complaint or in the Litigation. Notwithstanding anything in this paragraph, this Release excludes any claim requiring Defendants to perform the obligations under this Agreement and any remedies provided to Plaintiffs hereunder. For purposes of clarity, the Release includes, but is not limited to federal and state wage claims alleged in the Complaint including overtime pay, minimum wage claims, statutory and common law violations under the FLSA and New York State Labor Law, as well as any alleged retaliation claim.  Plaintiffs further represent that they are unaware of any other claims that Plaintiffs may have against the Defendant Releases other than those claims asserted in the Litigation.

    3.2 <u>Release by Defendants</u>:  Defendants, their attorneys, agents, successors, affiliates, heirs, and assigns, fully, finally and forever release, discharge and hold harmless Plaintiffs their attorneys, agents, and anyone acting or authorized to act on their behalf from any and all claims, demands, and causes of action for all matters that arise from or are related to the claims and defenses alleged in the Complaint and in the Litigation.

4. NON-INTERFERENCE

    4.1 Nothing in this Agreement shall interfere with Plaintiffs' right to file a charge, cooperate, or participate in an investigation or administrative proceeding conducted by the EEOC or state fair employment practices agency, or other federal or state regulatory law enforcement agency. However, the full consideration provided to Plaintiffs by this Agreement will be the sole relief provided to Plaintiffs for their released claims, and Plaintiffs will not be entitled to recover, and agrees to waive, any monetary benefits or recovery against the Defendants in connection with any such claim, charge, or proceeding without regard to who has brought the complaint or charge.

5. PARTIES' AUTHORITY

    5.1 The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and

      conditions hereof.  The Parties further acknowledge that they have had the assistance of legal counsel in connection with their entry into this Agreement and have had a full opportunity to have legal counsel explain the terms and conditions of this Agreement.

  5.2    Plaintiffs' Counsel represents and warrants that they have explained this Agreement to the Plaintiffs in their native language (in addition to English) (and translated same) to ensure that Plaintiffs fully understand the terms and conditions herein and are entering into this Agreement with full knowledge of the terms hereof.

6.    MUTUAL COOPERATION

  6.1    The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  Plaintiffs' Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

7.    NOTICES

  7.1    Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be overnight mailed to legal counsel for the respective party to the address as set forth in the Definition Section above. Notice shall be deemed to have been duly given as of the first business day after delivery of the Notice.

8.    INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

  8.1    Knowing and Voluntary Agreement.  The Parties have read carefully this Agreement and have executed it voluntarily and with full knowledge and understanding of its significance, meaning, and binding effect.  The Parties are competent to understand the content and effect of this Agreement, and the decision to enter into this Agreement has not been influenced in any way by fraud, duress, coercion, mistake, or misleading information.

  8.2    No Assignment.  Plaintiffs represent and warrant that they have not and will not assign or transfer, or purport to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

8.3    Entire Agreement.  Subject to the Court's approval of this Agreement, this Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

8.4    Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to Defendants, their affiliates, parents, subsidiaries, predecessors, successors, employees, agents and assigns; and additionally, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

8.5    Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

8.6    Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties through legal counsel.  Each Parties' counsel participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

8.7    Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles.

8.8    Continuing Jurisdiction.  This Court shall retain jurisdiction over the interpretation and implementation of this Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement.

8.9    Waiver or Modification to be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

    **8.10**  No Severability. If the Court does not approve this Agreement in the form executed by the Parties, the Agreement shall be void and the Parties shall act in good faith to attempt to resolve any provisions rejected by the Court.

    **8.11**  Counterparts. The Parties may execute this Agreement in multiple counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

    **8.12**  Facsimile and E-mail Signatures. Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or e-mail to counsel for the other party. Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

PORT DRAGO CORP.

By:_____
      Charles Drago, President


_____      _____
Charles Drago, individually                      Reynaldo Almonte

_____
Benigno Pacheco

7

**8.10** No Severability. If the Court does not approve this Agreement in the form executed by the Parties, the Agreement shall be void and the Parties shall act in good faith to attempt to resolve any provisions rejected by the Court.

**8.11** Counterparts. The Parties may execute this Agreement in multiple counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**8.12** Facsimile and E-mail Signatures. Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or e-mail to counsel for the other party. Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**PORT DRAGO CORP.**

By: _/s/ Charles Drago, President_
Charles Drago, President


_/s/ Charles Drago_                                    _____
Charles Drago, individually                            Reynaldo Almonte


_____
Benigno Pacheco

7